IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-01896-WDM-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff, and

KAREN STENVALL

    Plaintiff in Intervention,

v.

DENVER NEWSPAPER AGENCY, LLP,

    Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

    This matter is before me on three motions for summary judgment. In the first, filed April 10, 2006, Defendant Denver Newspaper Agency, LLP (the DNA) asks for summary judgment on the only claim brought by Plaintiff Equal Employment Opportunity Commission (the EEOC). In the second, filed on the dame day, DNA asks for summary judgment on all claims brought by Plaintiff in Intervention Karen Stenvall (Stenvall). And in the third, filed April 11, 2006, EEOC asks for partial summary judgment on the issue of conciliation. I have reviewed the parties' written arguments and their summary judgment evidence and find that oral argument is not required. For the reasons that follow, the first motion will be denied, the second will be granted in part, and the third will be granted.

## Background[1]

This case arises out of the DNA's firing of Stenvall, in May 2001, when she was six months pregnant. Prior to her termination, Stenvall worked as a sales manager for the DNA and its predecessor the Denver Post, and was repeatedly rewarded with salary increases and bonuses that were very near the maximum amount authorized for her position. Furthermore, Stenvall's employment records contain no indication of any disciplinary action, and in fact contains at least one commendation from a superior praising her as a "superstar."

Stenvall admits that she has an aggressive management style, but claims that prior to the announcement of her pregnancy in January 2001, her supervisors never criticized her for it. After her announcement, however, Stenvall alleges that her superiors began to question her commitment to the company, and targeted her for termination.

As a result, the EEOC, on behalf of Stenvall, brings a claim alleging that she was wrongfully discharged due to her pregnancy, in violation of Title VII. In addition, as an intervenor, Stenvall brings claims for wrongful discharge, retaliation, and hostile work environment under Title VII.

In response, the DNA argues that Stenvall's termination had nothing to do with her pregnancy. Rather the DNA claims that it fired Stenvall after receiving complaints about several instances of misconduct. First, one of Stenvall's subordinates, Mark Hector (Hector), complained that Stenvall had refused to allow him to postpone a

---

[1] Unless otherwise noted, the background facts, drawn from the parties' factual statements and supporting evidence, appear to be undisputed.

meeting with her so that he could be with his pregnant wife on her due date.  Second, another employee, Shana Bastemeyer (Bastemeyer), revealed that after Stenvall learned that Bastemeyer had lost her driver's license due to a DWAI conviction, Stenvall pretended to keep it a secret so that she could manipulate Bastemeyer.  Third, Bastemeyer also claimed to have overheard Stenvall calling one of her bosses a "bitch."  And finally, two individuals who had recently interviewed for positions at the DNA, Gene Fulton (Fulton) and Bryan Mosely (Mosely), told management that during these interviews, when they had lunch with Stenvall and others, Stenvall was very negative about the company and repeatedly disparaged her superiors.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Id.*

Discussion

1.      Conciliation

The first issue, raised by both the DNA and the EEOC in cross motions for summary judgment, is the adequacy of the EEOC's efforts at conciliation prior to bringing this lawsuit. Under Title VII, if the EEOC finds good cause to believe that an employee's discrimination claim is true, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b) (2007). This duty, which must be conducted in good faith, *see Marshall v. Sun Oil Co. of Pa.*, 592 F.2d 563, 566 (10th Cir. 1979), has been described as one of the EEOC's "most essential functions," *Patterson v. American Tobacco Co.*, 535 F.2d 257, 272 (4th Cir. 1976), and the "main procedural prerequisite to a suit," *Harris v. Amoco Production Co.*, 768 F.2d 669, 678 (5th Cir. 1985).

In this case, the breakdown of conciliation efforts centered around a single voice-mail message left by EEOC investigator Kim Rogers, a transcript of which has been provided by the DNA (*see* Voice Mail Tr., Ex. A-7 to Def.'s Motion, Docket No. 80). According to the DNA's interpretation of this message, Rogers demanded that prior to any face-to-face conciliation meeting, the DNA must make an opening offer of at least $150,000 — an amount the DNA considers unreasonable. After receiving this message, the DNA informed the EEOC that it was no longer interested in conciliation and that it would not attend the face-to-face meeting. (Miller Dep., Ex. A-9 to Def.'s Motion, Docket No. 80). The EEOC, however, interprets the Rogers message much differently. According to the EEOC's interpretation, the message merely: (1) confirms a

tentative date for the face-to-face meeting; (2) relays that *Stenvall's attorney* had said that the meeting was a waste of time unless they would get at least $150,000 on the table; and (3) creates some pressure to close the deal at the meeting rather than at some later date.

In their cross-motions for summary judgment, both parties urge me to view the evidence in the light most favorable to them, adopt their interpretation of the message, and rule in their favor.  And, while the DNA argues that dismissal is the only appropriate sanction, the EEOC argues that at most, I should stay the proceedings to allow for further conciliation efforts.  To decide this issue, however, I need not decide that either of the competing interpretations is preferable to the other.  In this Circuit, as long as the EEOC has made a "significant effort" at conciliation, its failure to fully honor its conciliation duties does not create a jurisdictional defect, but is merely relevant to whether or not this court should stay proceedings to allow further attempts at conciliation.  *Sun Oil*, 592 F.2d at 566; *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985).  After considering the parties' evidence, I find that no reasonable factfinder could conclude that the EEOC has failed to at least make a significant effort at conciliation.  Therefore, the only remaining question is whether I should stay the proceedings for further conciliation.  In this regard, I note that the DNA has made no indication that it would be interested in further conciliation, and the parties have been free to negotiate a settlement throughout this lengthy litigation.  Therefore, I conclude that a stay is unnecessary.  Accordingly, the EEOC's motion for partial summary judgment on the conciliation issue will be granted.

2.   Wrongful Termination

The DNA also moves for summary judgment on the plaintiffs' wrongful discharge claims. Since "a pregnancy discrimination claim is analyzed the same as other Title VII claims," *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999) (quotation omitted), and since Stenvall[2] does not rely upon direct evidence of discrimination, I apply the familiar burden-shifting framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-804 (1973). *See generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-508 (1993); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). Under this framework, Stenvall bears the initial burden of presenting a prima facie case of discrimination. *Kendrick*, 220 F.3d at 1226. If Stenvall does so, the burden shifts to the DNA "to articulate some legitimate, nondiscriminatory reason" for its action. *Id. at* 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). Then, if the DNA presents such a reason, Stenvall bears the "ultimate burden" of showing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

To show pretext, Stenvall must demonstrate that the DNA was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence." *Id.* (quotation omitted); *see Kendrick*, 220 F.3d at 1230 (listing three ways of showing pretext: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy

---

[2] Both the EEOC and Stenvall bring wrongful discharge claims that are essentially identical. For convenience, I will refer to them collectively as Stenvall in this section.

6

prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

In this case, the parties agree that the only disputed stage is the final one — pretext. The DNA has listed its legitimate non-discriminatory reasons for firing Stenvall as: her mistreatment of Hector, manipulation of Bastemeyer, disparagement of the DNA during Mosley and Fulton's interviews, and her reference to a superior as a "bitch." According to the DNA, summary judgment is appropriate because Stenvall has no evidence that these reasons are pretext.

In response, Stenvall emphasizes that as the nonmovant, all reasonable inferences must be drawn in her favor and presents a multitude of arguments of how such a view of the evidence could lead a reasonable jury to find pretext. Of particular importance is Stenvall's argument regarding the loss or destruction of many of her personnel files.

In some cases, when a party loses or destroys evidence that the party, at the time, had an obligation to preserve, a jury may be allowed to infer that the evidence would have been harmful to that party. "Such an obligation, usually arises when a 'party has notice that the evidence is relevant to litigation.'" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). And in this Circuit, "[t]he adverse inference must be predicated on the bad faith of the party destroying the records." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). Finally, the party seeking the

adverse inference must at least show "*some evidence* suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." *Kronisch*, 150 F.3d at 128 (emphasis added).  This last burden is intentionally low, however, so as not to undermine "the prophylactic and punitive purposes of the adverse inference," or to allow a party to profit from bad faith destruction.  *Id.*; *see generally id.* at 126 (discussing the prophylactic, punitive and remedial rationales underlying the rule).

In this case Kris Powers (Powers), who worked in the DNA Human Resources Department (HR) in 2001, testified that she had an extensive investigative file regarding Stenvall that she left in her desk when she stopped working for the DNA in 2004.  (*See* Pls.'s Resp. at 12-13, Add'l Undisputed Facts W & X, Docket No. 102) Powers claims that this file is where she kept all of her handwritten notes from the many times that she interviewed various individuals about Stenvall, or when she was the assigned note-taker in meetings about Stenvall.  *Id.*  The DNA, however, denies that it ever found this investigative file.  (Miller Dep., Pls.' Ex. 31, Docket No. 104, at 13:24-14:14)  But since the DNA knew of Stenvall's complaint to the EEOC well before 2004 (*see* Voice Mail Tr., Ex. A-7 to Def.'s Motion, Docket No. 80), a rational jury could conclude that the DNA acted in bad faith when it lost or destroyed Powers' investigation file, and therefore infer that the contents of the lost file were harmful to the DNA's defense.

This adverse inference is especially important in the context of Stenvall's case as a whole.  Stenvall has significant evidence of the falsity of the DNA's legitimate non-

discriminatory reasons. But as the DNA emphasizes in its briefs, the relevant inquiry is whether it honestly believed the truth of the complaints at the time. *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). Since it is reasonably possible that the missing notes would have contained evidence bearing on the question of honest belief, an adverse inference could lead a jury to rationally conclude that the DNA did not honestly believe the allegations against Stenvall. The DNA's motions for summary judgment on this issue will therefore be denied.

3.  Retaliation

Stenvall's Second Claim alleges that the DNA fired her because she complained to two HR employees that she was being targeted because of her pregnancy. Where, as here, there is no direct evidence of unlawful retaliation, courts review retaliation claims under the McDonnell Douglas burden-shifting framework. *Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04(1973)). The only difference being that the prima facie case is modified somewhat to fit the retaliation context. *See id.* Thus, Stenvall bears the initial burden of establishing a prima facie case by showing: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *See Duncan v. Manager, Dep't of Safety, City & County of Denver*, 1300, 1314 (10th Cir. 2005).

In its motion, the DNA argues that it is entitled to summary judgment on Stenvall's retaliation claim for two reasons: (1) Stenvall cannot establish the causation prong of her prima facie case because the people who decided to fire Stenvall were not

9

aware of her complaints to HR, and (2) Stenvall cannot show pretext in her retaliation claim for the same reasons she cannot show pretext in her wrongful discharge claim.

I disagree. As for the DNA's first argument, Stenvall has produced evidence that she complained to two HR employees, Judi Patterson (Patterson) and Linda Siedow (Siedow). (Stenval Dep., Pls.' Ex. 37, Docket No. 104, at 62:7-64:9) And, although both Patterson and Siedow deny that Stenvall ever made such complaints, it is undisputed that if she had, they would have reported it to their supervisors. (Siedow Dep., Pls.' Ex. 36, Docket No. 104, at 52:22-53:3; Patterson Dep., Pls.' Ex. 34, Docket No. 104, at 38:22-39:3) A reasonable jury could credit Stenvall's assertion that she made the complaints, and also reasonably infer that Siedow and Patterson informed their superiors. And, as I have already concluded above, Stenvall's evidence, if believed, is sufficient to demonstrate pretext. Therefore, summary judgment is not appropriate on Stenvall's retaliation claim.

4.  Hostile Work Environment

Stenvall also claims that she was subjected to a hostile work environment due to her pregnancy. In order for this claim to survive summary judgment, she "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (internal quotations omitted). According to the DNA's motion for summary judgment, Stenvall's claims,

based upon only a few instances of allegedly discriminatory behavior, cannot meet this high standard.

In response, Stenvall argues that the following facts support her claim. (*See* Pl. in Intervention's Resp. at 18-19, Docket No. 102)  First, on February 28, 2001, she needed to leave work for emergency testing relating to her pregnancy. (*Id.* at 8, Add'l Undisputed Fact E)  This upset her supervisor because it meant that Stenvall would not be available to pick up Bastemeyer, who did not have a driver's license at the time. *Id.* Therefore, Stenvall returned to work after her testing. *Id.*  Second, on April 27, 2001, Stenvall's superiors confronted her in a meeting about, among other things, her treatment of Hector and her behavior at Fulton's interview; and one supervisor also commented that unless she was willing to work twenty hours per day, there was no place for her at the company. (*See id.* at 4, Resp. to Undisputed Fact 19)  Afterwards, Stenvall became very emotional, and one of her superiors suggested that she was more sensitive due to her pregnancy. *Id.*  Third, on May 7, 2001, Stenvall gave advance notice that she would be taking the whole day off to undergo a pregnancy-related test that requires twelve hours of fasting followed by over three hours of testing. (*Id.* at 9, Add'l Undisputed Fact I)  Nonetheless, one of her supervisors required Stenvall to attend an emergency meeting at 1:00 p.m. that day, and when Stenvall questioned her about it, Stenvall was told she needed to "get her priorities straight." *Id.* Fourth, prior to her pregnancy, Stenvall's activities as Chair of the Cherry Creek Chamber of Commerce (the CCCC) were encouraged; but afterwards, she was frequently criticized. (*Id.* at 8, Add'l Undisputed Fact F)  Finally, after she complained

of pregnancy discrimination to two HR employees on May 11, 2001, she saw no action on her complaints until she was fired on May 18, 2001. (*See Id.* at 9-10, Add'l Undisputed Fact J)[3]

Assuming these allegations[4] are true, however, I nonetheless conclude that they are insufficient to allow a reasonable jury to find that the work atmosphere was so "severe or pervasive [as] to alter the conditions of [Stenvall's] employment." *Davis*, 142 F.3d at 1341. Stenvall's allegations portray instances of adverse conduct that, while they should not be condoned, were relatively infrequent, of limited severity, and did not significantly interfere with her work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (listing some of the factors relevant to determining whether an environment is sufficiently hostile). Therefore, the DNA's motion for summary judgment will be granted as to Stenvall's hostile work environment claim.

Accordingly, it is ordered:

1. Defendant's motion for summary judgment on Plaintiff EEOC's claim or the issue of conciliation, filed April 10, 2006 (Docket No. 79), is denied.

---

[3] Although this assertion is obviously very relevant to Stenvall's retaliation claim, I note that since the DNA had only one week to react to her complaints, this assertion is somewhat less probative of Stenvall's hostile work environment claim.

[4] In addition, Stenvall alleges a few other facts that are either not relevant, or are minimally relevant to her hostile work environment claim. For example, she points out that she was fired without ever receiving a written warning. Although this may be relevant to her wrongful discharge claim. It is not relevant to her hostile work environment claim.

2. Defendant's motion for summary judgment on Plaintiff in Intervention Stenvall's claims, filed April 10, 2006 (Docket No. 81), is granted in part to dismiss the hostile work environment claim and denied in part.

3. Plaintiff's motion for partial summary judgment on the issue of conciliation, filed April 11, 2006 (Docket No. 84), is granted.

4. The case remains pending for trial on Plaintiffs' claims for wrongful discharge and retaliation in violation of Title VII.

DATED at Denver, Colorado, on February 12, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge